## THE LEVI DAVIS.

*(District Court, E. D. New York. December 13, 1881.)*

1. SALVAGE—TUG AND TOW.

> The amount of salvage determined where a tug assisted another tug that was temporarily disabled while the two were landing a tow, and rescued her from peril and helped to bring her into port.

In Admiralty.

The tug Leonard Richards was employed to assist the tug Levi Davis in towing a raft and catamaran, loaded with lumber, from New York to Barnegat inlet. The Davis was able to go over the bar at Barnegat, but the Richards was not. The tow was in charge of a pilot supplied by the Davis, which was the leading boat. The agreement with the Richards was to help transport the tow to "off Barnegat inlet." When the tow arrived off Barnegat, a storm was threatening and the sea was heavy. Presently the Richards struck the bottom, when she at once cast off the hawser to the Davis and cut the hawser to the tow. The Davis then proceeded to the tow, and in so doing struck the bottom herself and broke her rudder. She

then signalled the Richards to help her, and the Richards, returning, took hold of the Davis, held her, and lay by her that night. Next day the Richards began to tow the Davis back to New York, and took her nearly to Sandy Hook, the last part of the voyage being performed by the Davis unaided. The tow drifted into the inlet unaided and without sustaining injury.

Libel was filed to recover salvage for the Leonard Richards against the Levi Davis.

*Benedict, Taft & Benedict*, for libellant.

*Beebe, Wilcox & Hobbs*, for the Davis.

BENEDICT, D. J. My conclusions in this case are as follows: If, as asserted by the claimant and denied by the libellant, the Richards broke her contract by casting off the tow before the Levi Davis took hold of it, still such failure to perform her contract, if failure it was, did not create or tend to create the peril from which the Levi Davis was afterwards rescued. It would have been necessary for the Davis to get hold of the tow if the Richards had not cast off when she did, and, as the tow was situated, she could not have done so without danger of striking the bottom. The peril was caused by the Davis having taken the tow into shallow, and, under the circumstances, dangerous water, and it was in no way increased by the act of the Richards in casting off the tow when she did, and after she herself had struck the bottom. The Davis was rendered helpless and in need of immediate assistance by the breaking of her rudder, and that misfortune is not attributable to any act or misconduct on the part of the Richards.

When the Davis thus became disabled by the breaking of her rudder, and liable to be driven ashore in the gale, the Richards was under no legal obligation, arising out of the contract or otherwise, to tow her out of danger or to render her any other service. It was, therefore, open to the Richards, when the Davis signalled for assistance, to undertake to assist her in the capacity of a salvor. At the time when the Richards undertook that service the situation of the Davis was one of much peril. By the exertions of the Richards she was rescued from her peril and brought back to New York in safety. The service was valuable. It was voluntary, and compensation for it depended upon success. For such a service the Richards is entitled to a salvage reward.

In determining the proper amount of such reward I observe, among other things, the peril in which the Davis was placed by the breaking

of her rudder when so near Barnegat shoal in such a gale. ·The extent of the peril is shown by the act of the master in putting on a life preserver. The Davis was kept from going ashore by being taken hold of and held by the Richards during the whole of a terrible night. She was then, being still disabled in her rudder, towed by the Richards from Barnegat to the Hook, and then accompanied to Jersey City at her special request, because, although her rudder had been made available to a certain degree, the condition of it rendered her liable again to become helpless at any moment. I also take notice of the value of the Davis, some $6,000, and that of the Richards, some $22,000; that the Richards sustained no loss save that of labor and time; and, if she encountered any peril to herself in the performance of the service, it was not serious.

Upon the whole case, I consider that the sum of $750 should be allowed as salvage. The allotment of this sum will be made after hearing counsel in respect thereto.